**STATON v. BRAME**

[136 N.C. App. 170 (1999)]

PHILIP A.R. STATON, PLAINTIFF, AND INGEBORG STATON, MERCEDES STATON, THE 1991 REVOCABLE LIVING TRUST OF INGEBORG STATON, AND THE 1983 REVOCABLE LIVING TRUST OF MERCEDES STATON, PLAINTIFFS, AND WILLIAM E. WEST, JR., INTERVENOR-PLAINTIFF v. THOMAS BRAME, JERRI BRAME, JERRI BRAME D/B/A T&J VENTURES, T&J VENTURES, INC., S&B INVESTMENTS, JRB INVESTMENTS, JRB INVESTMENTS, INC., GLOBAL SPORTS MANAGEMENT CO., GLOBAL LAND MANAGEMENT, INC., AND DARRELL WILSON, DEFENDANTS, CROSS-CLAIMANTS, AND THIRD-PARTY DEFENDANTS, AND CENTURA BANK, DANNY WRENN, GEORGE R. JARVIS, POYNER & SPRUILL, POYNER & SPRUILL, L.L.P., CURTIS TWIDDY, ESQ., AND CORNELIUS COGHILL, ESQ., DEFENDANTS; PHILIP A.R. STATON, PLAINTIFF, AND INGEBORG STATON, MERCEDES STATON, THE 1991 REVOCABLE LIVING TRUST OF INGEBORG STATON, AND THE 1983 REVOCABLE LIVING TRUST OF MERCEDES STATON, PLAINTIFFS AND THIRD-PARTY PLAINTIFFS v. CENTURA BANK, DANNY WRENN, GEORGE R. JARVIS, POYNER & SPRUILL, POYNER & SPRUILL, L.L.P., CURTIS TWIDDY, ESQ., AND CORNELIUS COGHILL, ESQ., DEFENDANTS AND THIRD-PARTY DEFENDANTS, AND CENTURA BANK, THIRD-PARTY PLAINTIFF v. PHILIP A.R. STATON, JERRI R. BRAME, PHILIP A.R. STATON, TRUSTEE OF STATON FOUNDATION DECLARATION OF THE TRUST DATED DECEMBER 6, 1993, ALL UNKNOWN AND UNASCERTAINED HEIRS OF THE ESTATE OF PHILIP A.R. STATON, INGEBORG E. STATON, BENEFICIARY OF THE INGEBORG E. STATON REVOCABLE LIVING TRUST DATED NOVEMBER 3, 1993, EDUARDO ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, VIVIANA ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, ROBERTO ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, ALL UNKNOWN AND UNASCERTAINED HEIRS OF THE ESTATE OF INGEBORG E. STATON, AND MICHAEL F. EASLEY, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, THIRD-PARTY DEFENDANTS; PIEDMONT INSTITUTE OF PAIN MANAGEMENT, T. STUART MELOY, M.D., NANCY I. FALLER, D.O., AND WILLIAM JOSEPH MARTIN, D.O., PLAINTIFFS, AND INGEBORG STATON, MERCEDES STATON, THE 1991 REVOCABLE LIVING TRUST OF INGEBORG STATON, AND THE 1983 REVOCABLE LIVING TRUST OF MERCEDES STATON, PLAINTIFFS AND THIRD-PARTY PLAINTIFFS v. CENTURA BANK, DANNY WRENN, GEORGE R. JARVIS, POYNER & SPRUILL, POYNER & SPRUILL, L.L.P., CURTIS TWIDDY, ESQ., AND CORNELIUS COGHILL, ESQ., DEFENDANTS AND THIRD-PARTY DEFENDANTS, AND CENTURA BANK, THIRD-PARTY PLAINTIFF v. PHILIP A.R. STATON, JERRI R. BRAME, PHILIP A.R. STATON, TRUSTEE OF STATON FOUNDATION DECLARATION OF THE TRUST DATED DECEMBER 6, 1993, ALL UNKNOWN AND UNASCERTAINED HEIRS OF THE ESTATE OF PHILIP A.R. STATON, INGEBORG E. STATON, BENEFICIARY OF THE INGEBORG E. STATON REVOCABLE LIVING TRUST DATED NOVEMBER 3, 1993, EDUARDO ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, VIVIANA ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, ROBERTO ARBOLEDA, MINOR CHILD OF INGEBORG E. STATON, ALL UNKNOWN AND UNASCERTAINED HEIRS OF THE ESTATE OF INGEBORG E. STATON, AND MICHAEL F. EASLEY, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, THIRD-PARTY DEFENDANTS

No. COA98-1501

(Filed 21 December 1999)

STATON v. BRAME

[136 N.C. App. 170 (1999)]

**Constitutional Law— self-incrimination—different proceeding**

The trial court erred by granting a motion to compel defendant Brame's response to deposition questions in this state action involving misappropriation of funds when he had previously given relevant testimony in a deposition as part of federal bankruptcy/equitable distribution proceedings. The federal bankruptcy/equitable distribution proceeding is a separate proceeding from the state court action, and defendant's waiver of his right against self-incrimination in the federal proceeding did not apply in the state court action.

Judge WYNN concurs in the result only.

Appeal by defendant Samuel Thomas Brame from order entered 21 August 1998 by Judge Ben F. Tennille in Forsyth County Superior Court. Heard in the Court of Appeals 16 September 1999.

*Davis & Harwell, P.A., by Fred R. Harwell, Jr., for plaintiff-appellees Ingeborg Staton, Mercedes Staton, The 1991 Revocable Living Trust of Ingeborg Staton, and The 1983 Revocable Living Trust of Mercedes Staton.*

*Adams Kleemeier Hagan Hannah & Fouts, by Robert G. Baynes, W. Winburne King, III, and Christine L. Myatt, for defendant-appellee Centura Bank, and Smith Helms Mulliss & Moore, L.L.P., by Larry B. Sitton, for Poyner & Spruill, L.L.P., Curtis Twiddy, and Cornelius Coghill.*

*Edward Jennings for defendant-appellant Samuel Thomas Brame.*

*Bell, Davis & Pitt, P.A., by James R. Fox, for Philip Staton, no brief filed.*

*Randolph M. James for Darryl Wilson, no brief filed.*

*Bennett & Guthrie, L.L.P., by Richard V. Bennett, for Minor Party Beneficiaries of Trust, no brief filed.*

*Blanco Tackbery Combs & Matamoros, by Reginald F. Combs, for Minor Party Beneficiaries of Trust, no brief filed.*

*Michael F. Easley, Attorney General, by George W. Boylan, Special Deputy Attorney General, for the State, no brief filed.*

*Jerri S. Russell, pro se, no brief filed.*

*Edward L. Powell for Piedmont Institute of Pain Management, T. Stuart Meloy, M.D., Nancy I. Faller, D.O., and William Joseph Martin, D.O., no brief filed.*

*Ivey, McClellan, Gatton & Talcott, L.L.P., by Charles M. Ivey, III, Trustee of Estate of Jerri Russell, Bankruptcy, no brief filed.*

*M. Bruce Magers, Chapter 7 Trustee, no brief filed.*

EDMUNDS, Judge.

This suit originated with an allegation that defendants mishandled and misappropriated funds belonging to plaintiffs. The issue before us is the propriety of the trial court's order requiring defendant Samuel Thomas Brame (Brame) to provide testimony in the instant case. Although Brame previously had given relevant testimony at a deposition conducted as part of bankruptcy proceedings, he asserted his Fifth Amendment right not to respond to deposition questions in the case at bar. The trial court granted Centura Bank's (Centura) motion to compel Brame's testimony. Brame appeals on the ground that the trial court's order violates his rights under the Fifth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution. We reverse.

As a preliminary matter, we note that the caption of the 21 August 1998 order appealed from lists only one plaintiff and one defendant in each action and leaves all other parties under the rubric "et al." Appendix B of the Rules of Appellate Procedure requires that all parties be named in the caption. *See Buie v. Johnston*, 69 N.C. App. 463, 463 n.1, 317 S.E.2d 91, 92 (1984). The instant case illustrates the importance of this rule; defendant Brame, whose actions constitute the subject of this appeal, is not named in the caption of the order from which the appeal was taken and is only identified as a party defendant on page six of that order. However, the record also contains a 29 July 1998 order that appears to contain the complete caption. We adopt the heading of this order as setting out the correct caption of the case.

The intricate backdrop of this case need not be set out in detail. Plaintiffs Philip A.R. Staton, Ingeborg E. Staton, and Mercedes Staton (the Statons), who lived abroad, inherited a block of stock in the Pan American Beverage Company. Trusts were set up for Ingeborg and Mercedes Staton. The Statons wired funds to an account called the PIM Group Clearing Account at Centura in Winston-Salem in 1993. Defendants Brame and his former wife, Jerri Russell (Russell), who

were living in the United States, were provided powers of attorney by the Statons. These defendants were to allocate funds from the PIM Group Clearing Account into investments for the Statons and to manage their assets pursuant to a written fee arrangement. The Statons maintained little control over Brame's treatment of their money until early 1996. Brame allegedly used funds from the PIM Group Clearing Account for his own personal benefit and for speculative and unsuccessful business ventures and investments. In 1996, the Statons and others filed the first of several claims (the Staton cases) against Brame, Russell, and Centura for Brame's alleged misuse of the money. Centura asserted claims against Brame for contribution and indemnification. The various suits against Brame were joined for discovery.

After the 1996 institution of the Staton cases, the United States Internal Revenue Service informed Brame that he was the target of an ongoing criminal investigation concerning many of the matters relevant to the Staton cases. Subsequently, on 21 December 1998, a federal indictment was returned against Brame in the Middle District of North Carolina.

Centura and other parties to the Staton cases attempted to depose Brame on 27 March 1997. At that point, Brame was aware that a criminal investigation had begun. The deposition did not take place because Brame asserted his privilege against self-incrimination, pursuant to the Fifth Amendment of the United States Constitution. Centura's subsequent motion to compel Brame's deposition testimony, filed on 23 April 1998, was denied. However, on 20 July 1998, Centura filed a Motion to Reconsider, citing Brame's waiver of his Fifth Amendment privilege at a 1 August 1997 deposition conducted as part of a pending bankruptcy action.

Centura's Motion to Reconsider and supporting exhibit revealed that on 27 December 1996, Brame filed a petition in bankruptcy in the United States Bankruptcy Court for the Middle District of North Carolina. Russell, Brame's former wife, also filed for bankruptcy at the conclusion of the marriage. On 1 August 1997, Brame was deposed in an equitable distribution action, which had been removed to the Bankruptcy Court. He was questioned by an attorney for the Trustee in Bankruptcy and by an attorney for Russell. When questioning began, Brame responded, "I did not decide to talk until late yesterday. I spent several sleepless nights. But it's time to clear the air. It was the toughest decision I think I've ever made in my

life not to plead the Fifth . . . ." He then answered questions posed to him.

The trial court found that by answering questions in the bankruptcy/equitable distribution proceeding, Brame waived his Fifth Amendment privilege against self-incrimination in the case at bar. "Having knowingly waived his right for his personal benefit, he should not be allowed [to] assert those same rights in this litigation where it might be beneficial to him not to testify." The trial court then granted Centura's Motion to Reconsider and ordered Brame to answer deposition questions. Brame appeals.

Whether Brame's waiver of his Fifth Amendment rights in a hearing related to bankruptcy binds him for the purposes of this case is a question of law. We review questions of law *de novo*. *See Al Smith Buick Co. v. Mazda Motor of America*, 122 N.C. App. 429, 470 S.E.2d 552 (1996). Brame contends the trial court's order requiring him to provide deposition testimony violates his rights under the United States and North Carolina Constitutions. We begin with a review of pertinent cases. An analogous issue arose in *State v. Pearsall*, 38 N.C. App. 600, 248 S.E.2d 436 (1978). *Pearsall* involved an armed robbery in which two defendants were charged, then tried separately. One defendant, Williams, after being convicted, entered notice of appeal. Williams then provided self-incriminating testimony at her co-defendant's first trial. However, when Williams was called as a witness at the co-defendant's second trial, she refused to testify, exercising her Fifth Amendment rights. Noting that Williams' own appeal was still pending at the time she refused to testify when called as a witness in the second trial, we held that her testimony in the first trial did not operate as a waiver of her Fifth Amendment rights in the second trial. "It is the majority view that a witness who testifies to incriminating matters in one proceeding does not thereby waive the right to refuse to answer as to such matters on subsequent, separate, or independent trial or hearing." *Id.* at 603, 248 S.E.2d at 438 (citations omitted).

We reaffirmed the *Pearsall* rule with our holding in *State v. Hart*, 66 N.C. App. 702, 311 S.E.2d 630 (1984). In *Hart*, two defendants were charged with drug-related offenses. One defendant, Smith, refused to testify as a defense witness at Hart's trial because he feared his testimony would incriminate him in his own pending trial. However, Smith previously had executed a written statement to the effect that the drugs were not Hart's. Despite the existence of this statement, we held that Smith had not waived his Fifth Amendment right to refuse

to give testimony in Hart's criminal trial. "The rule in this state and most others . . . is that a witness who testifies to incriminating matters in one proceeding does not thereby waive the right to refuse to answer questions concerning such matters at a subsequent hearing or trial." *Id.* at 705, 311 S.E.2d at 632 (citing *Pearsall*, 38 N.C. App. 600, 248 S.E.2d 436).

In light of our prior holdings, the relevant issue before us is whether the federal bankruptcy/equitable distribution proceeding, in which Brame provided testimony, is a separate proceeding from the Staton cases, in which he asserts his Fifth Amendment rights. Centura cites *In re Mudd*, 95 B.R. 426 (Bankr. N.D. Tex. 1989) for the proposition that a civil suit and equitable distribution/bankruptcy proceeding are the same proceeding. In *Mudd*, the debtor testified at five examinations conducted pursuant to Bankruptcy Rule 2004. At the sixth Rule 2004 examination, however, the debtor invoked his Fifth Amendment privilege and refused to answer questions, claiming that additional indictments were pending against him. The court implicitly found that all of the Rule 2004 examinations were the same proceeding and explicitly found that the defendant's answers in earlier examinations presented a distorted and incomplete picture. The court held that the defendant's original waiver of his Fifth Amendment privilege in prior examinations constituted a waiver in subsequent examinations conducted pursuant to Rule 2004, in which the trustee sought details of the defendant's previous testimony, "*unless* revealing those details would further incriminate him or subject him to new areas of incrimination." *Id.* at 431.

*Mudd* is readily distinguishable. A civil deposition in state court is manifestly different from an equitable distribution/bankruptcy proceeding in federal court. Not only are there significant procedural and jurisdictional differences, the two depositions have different purposes. Brame's deposition in the bankruptcy matter pertained to resolution of equitable distribution matters between Brame and his former spouse; the attempted deposition in the case at bar apparently related to his authority to act on behalf of plaintiffs. Unlike the defendant in *Mudd*, Brame was not being asked to provide details underlying earlier testimony he had provided in the same type of proceeding before the same court. Therefore, Brame was entitled to exercise his right against self-incrimination under the Fifth Amendment of the United States Constitution, and the trial court erred when it granted Centura's motion to compel Brame to answer deposition questions.

Accordingly, it is unnecessary to address Brame's claim under Article I, Section 23 of the North Carolina Constitution. "[B]ecause the United States Constitution is binding on the states, the rights *it* guarantees must be applied to every citizen by the courts of North Carolina, so no citizen will be 'accorded lesser rights' no matter how we construe the state Constitution." *State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998). We have determined that Brame effectively invoked his Fifth Amendment right against self-incrimination when he was deposed in the case at bar; he has no lesser right under our state constitution.

Finally, on 25 August 1999, Centura and Poyner & Spruill filed a joint motion pursuant to N.C. R. App. P. 9(b) for leave to amend the record on appeal to include material relating to a superseding indictment returned against Brame on 28 June 1999. The Statons oppose the motion, contending that the records in question originated after the trial court's order to compel was entered and after notice of appeal was given. The motion for leave to amend is denied.

Reversed.

Judge JOHN concurs.

Judge WYNN concurs in the result only.